UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

Case No.: 1:23-CV-02467-AMD-JAM

TODD C. BANK, Individually and on
Behalf of All Others Similarly Situated,

      Plaintiff,

v.

DIMENSION SERVICE CORPORATION,

      Defendant.

_____/

**DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT AND
INCORPORATED MEMORANDUM
OF LAW**

Defendant Dimension Service Corporation ("Dimension"), pursuant to Fed. R. Civ. P. 56(a) and Local Rule 56.1, moves for final summary judgment in its favor on Plaintiff Todd C. Bank's complaint seeking declaratory and monetary relief against Dimension under the Telephone Consumer Protection Act, 47 U.S.C § 227 ("TCPA"). Dimension is entitled to summary judgment for four separate reasons: (1) Dimension did not make the phone call at issue; (2) Bank has already received the maximum statutory recovery from another defendant for the same phone call; (3) Bank's TCPA claim against Dimension is barred by res judicata; and (4) Bank was not the "called party" under the TCPA and therefore lacks standing.[1]

## INTRODUCTION

Bank has sued Dimension under the TCPA based on a single alleged phone call in May of 2022. However, the undisputed facts indicate that Dimension did not actually make this phone call

---

[1] This fourth ground for seeking summary judgment was not included in Dimension's pre-motion conference package. Dimension only recently became aware of this argument upon the issuance in late January of a decision in another case in this Court involving Bank himself in which this issue was discussed: *Bank v. ICOT Holdings, LLC*, 2024 U.S. Dist. LEXIS 13672 (E.D.N.Y. Jan. 25, 2024) (Donnelly, J.). Bank is not prejudiced by the inclusion of this fourth argument as it involves nearly identical facts and law as that addressed in the *ICOT* decision.

1

which Bank answered. Instead, a third-party servicer, Pelican Investment Holdings Group, LLC ("Pelican"), made the phone call on Dimension's behalf. As a result, there can be no liability against Dimension as a matter of law. In addition, Bank has already sued Pelican in this Court for the same telephone call, obtained the maximum statutory recovery from Pelican for that call ($1,500), and voluntarily dismissed that earlier action against Pelican with prejudice at a time when Bank (had he so chosen) could have easily added Dimension as a defendant to that lawsuit. Therefore, Bank cannot seek to obtain a double recovery against Dimension after fully recovering against Pelican, and moreover Bank's claims are barred by res judicata. Finally, Bank lacks standing because the phone call was placed to his mother and not Bank, and therefore Bank is not the "called party" with the ability to sue under the TCPA. For all or any one of these reasons, Bank's claims against Dimension must be dismissed and Dimension is entitled to final summary judgment against Bank.

## SUMMARY JUDGMENT STANDARD

Under well-settled federal law, the court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The burden of establishing the absence of a genuine issue of material fact lies with the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant "bears the initial responsibility of informing the … court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. To discharge this burden, the movant must point out to the court that there is an absence of evidence to support the nonmoving party's case. *Id.* at 325.

2

After the movant has met its burden, the burden of production shifts and the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986). The court in *Matsushita* further reasoned that "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Id.* at 599. According to the plain language of Fed. R. Civ. P. 56(e), the non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleadings," but instead must come forward with "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Matsushita*, 475 U.S. at 587. "[C]onclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment." *Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir. 1996)

Similarly, the Court in *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242 (1986), held that "[t]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 247-48. (emphasis in original). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50. Finally, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## **FACTS SUPPORTING SUMMARY JUDGMENT**

This matter arises under the Telephone Consumer Protection Act, 47 U.S.C § 227 ("TCPA") and concerns a singular phone call allegedly placed on May 18, 2022 which Bank

3

answered. (Dimension's Statement of Undisputed Material Facts ("Statement"), at ¶ 1). Bank seeks the following monetary damages in this case: (a) pursuant to 47 U.S.C. Section 227(b)(3)(B), statutory damages of $500 per violation of 47 U.S.C. Section 227(b)(1) for Plaintiff and the other Class Members; and (b) pursuant to 47 U.S.C. Section 227(b)(3)(C), up to $1,000 of statutory damages for Plaintiff and the other Class Members, in addition to the statutory damages prayed for in the preceding paragraph, if the Court finds that Defendant knowingly or willfully violated 47 U.S.C. Section 227(b)(1). (Statement ¶ 9). This totals $1,500 in requested damages. (*Id.*).

Prior to bringing this lawsuit, Bank has previously sued Pelican in a case styled *Bank v Pelican Investment Holdings Group, LLC*, Case No. 22-CV-3634 (E.D.N.Y.) (the "Pelican Case"). (Statement ¶ 2). In the Pelican Case, Bank alleged that Pelican was responsible under the TCPA for making the same May 18, 2022 phone call at issue in the instant case. (Statement ¶ 3). Bank did not sue Dimension in the Pelican Case, and the deadline for amendment of pleadings in the Pelican Case had not passed when Bank found out Dimension supposedly made the telephone call at issue in this lawsuit. (Statement ¶ 4). Bank settled the Pelican Case in return for a payment of $1,500.00 by Pelican. (Statement ¶ 5). Upon receipt of the $1,500.00 settlement payment, Bank dismissed the Pelican Case with prejudice, with each party to bear his or its own attorney's fees and costs. (Statement ¶ 6).

Dimension did not place the call on May 18, 2023 that Bank answered. (Statement ¶ 7). Instead, Dimension had Pelican call Bank on its behalf consistent with Dimension's Producer Agreement with Pelican, under which Dimension required Pelican to comply with the TCPA when placing calls for Dimension. (Statement ¶ 8).

The May 18, 2022 phone call was made to a cellular phone owned by Bank's mother, and was received at Bank's mother's home. (Statement ¶ 10). Bank does not live at his mother's home.

4

(Statement ¶ 11). Bank visits his mother with some regularity, occasionally stays overnight, and spends what Bank has termed a "sizable minority" of his time at his mother's home. (*Id.*). When Bank visits his mother at her home or accompanies his mother outside of that home, Bank has permission from his mother to place and accept phone calls using his mother's cell phone. Otherwise, however, the cell phone stays with Bank's mother and Bank does not use it. (Statement ¶ 12). The statements and charges for the cell phone owned by Bank's mother to which the May 18, 2022 phone call was placed are sent to and paid for by Bank's brother. (Statement ¶ 13). Unlike his mother, Bank does not own any phone lines that are included as part of a family plan or among the statements sent to and paid for by Bank's brother. (Statement ¶ 14). When asked whether Bank uses her cellular phone when he visits her, Bank's mother testified: "No, not really. No." (Statement ¶ 15).

## ARGUMENT

### I.    Dimension did not make the phone call.

The undisputed evidence shows that Dimension did not place the call on May 18, 2022 that Bank answered. Michelle DeFouw testified in her deposition on behalf of Dimension that it was not the entity that placed the telephone call on May 18, 2022. (Statement ¶ 7). Instead, the evidence demonstrates that Pelican was the entity that made this phone call on Dimension's behalf, and that Dimension required that Pelican comply with the TCPA when doing so. (Statement ¶ 8). Because Dimension did not "make" or "initiate" the phone call at issue, liability cannot attach to it under the TCPA as a matter of law. *See* 47 U.S.C. § 227(b) (stating it shall be illegal for any entity to "make any call" or "initiate any telephone call").

To the extent that Bank takes the position that Pelican was acting as Dimension's agent when it placed the phone call such that Dimension can still be held liable under the TCPA, such

**Cahen Law, P.A., 1900 Glades Road, Suite 270, Boca Raton, Florida 33431**
**Office: (561) 922-0430, geoff@cahenlaw.com**

an argument would be unavailing. The burden of demonstrating vicarious liability rests with the plaintiff, and Bank has utterly failed to meet this burden. Bank's complaint (Dkt. No. 1) is devoid of any allegation that any purported agent of Dimension initiated the subject phone call as opposed to Dimension itself, or that Dimension should be held vicariously liable for that purported agent's actions. As stated by this Court in a case involving this same plaintiff, "[t]o prove vicarious liability, plaintiff must show a fiduciary relationship existed between a principal and agent where the principal manifested assent to the agent acting on his behalf and subject to his control." *Bank v. Dorfman*, 2021 U.S. Dist. LEXIS 249734, at *7 (E.D.N.Y. Dec. 21, 2021). No such proof has been adduced by Bank in his complaint or during discovery in this matter. With respect to Bank, this appears to be a recurring shortcoming, as this Court has noted that "[t]his particular Plaintiff [i.e., Bank] has run into this same [pleading] issue, in this Court, many times when alleging TCPA violations." *Id.* at *23; *see also Cunningham v. Channer, LLC*, 2018 U.S. Dist. LEXIS 165430, at *16-18 (W.D.N.Y. Sep. 26, 2018) (dismissing TCPA claim based on vicarious liability where the plaintiff "has not asserted any facts alleging that [defendant] manifested assent to another to act on its behalf or under its control" other than purely "conclusory allegations" that are insufficient to meet a plaintiff's burden of proof).

II.     **Bank cannot obtain a double recovery for the same phone call.**

Even if Bank had successfully pled that Pelican was acting as Dimension's agent when it placed the phone call (which is denied), Bank has already received the maximum permitted recovery under the TCPA for a single phone call ($1,500.00) from Pelican, and therefore he cannot recover any additional money as a matter of law from Dimension. Under the TCPA, a plaintiff has a private right of action and can recover "$500 in damages for each such violation," and an additional $1,000 in treble damages if the court determines that the defendant "willfully or

6

knowingly" violated the statute, for a total maximum recovery of $1,500 per violative phone call. *See* 47 U.S.C. § 227(b)(3)(B) & (C); *see also Edeh v. Midland Credit Mgmt.*, 748 F. Supp. 2d 1030, 1040 (D. Minn. 2010) (observing that "the maximum statutory damages available under the TCPA [are] … $1500 – i.e., $500 trebled…."); *Masters v. Wells Fargo Bank S. Cent., N.A.*, 2013 U.S. Dist. LEXIS 101171, at *13 (W.D. Tex. July 11, 2013) (holding that after receiving $1,500 offer of settlement from the defendant, plaintiff's "TCPA claim is moot because he has been offered the maximum award he can possibly receive under the statute"). It is undisputed that Bank has already received the $1,500 maximum recovery from Pelican for the identical May 18, 2022 phone call that is the subject of this litigation. (Statement ¶¶ 3-5). Because Bank cannot obtain a double recovery under the TCPA for the same phone call, regardless of the merits of such claims, his attempt to do so through this action against Dimension must be rejected on this additional basis.

In response to this argument, Bank has previously claimed that the doctrine against double recovery only applies where the first recovery resulted from a judgment, and not (as here) through settlement. However, this position is simply incorrect and the bar against double recovery plainly precludes Bank from seeking damages from Dimension in this litigation. Where the TCPA has established an unambiguous monetary cap on a plaintiff's recovery for each individual violation ($1,500.00), Bank's attempt to exceed this cap by settling for this statutory maximum from one defendant (Pelican) and then suing another defendant (Dimension) based on the identical phone call will not lie. Contrary to Bank's assertion, the doctrine of double recovery applies equally to both settlements and judgments as long as the same damages for the same injury are sought in both actions, and the earlier settlement resulted in a dismissal with prejudice. *See, e.g.*, *Burt v. Rodriguez*, 2010 U.S. Dist. LEXIS 161951, at *17 (E.D.N.Y. Apr. 9, 2010) ("Because plaintiff's claims were dismissed with prejudice, the settlement functions as a final judgment on the merits,

7

and future recovery for the same injury is barred by the rule against double recovery."); *accord Hughes v. Lillian Goldman Fam., LLC*, 153 F. Supp. 2d 435, 447 (S.D.N.Y. 2001) ("[U]nder New York law, a discontinuance with prejudice, including one pursuant to a settlement, constitutes a final judgment on the merits for purposes of res judicata.").

This principle has been applied in the TCPA context. For example, in *Shamblin v. Obama for America*, 2015 U.S. Dist. LEXIS 141141 (M.D. Fla. Oct. 16, 2015), the plaintiff had sued several defendants under the TCPA resulting from the same handful of political phone calls. After the plaintiff settled for the statutory maximum from one of the defendants, the remaining defendants sought dismissal of the litigation based on mootness and the doctrine of double recovery. The court noted that, unlike Bank in this case, "[t]o her credit, [plaintiff] appears to concede that she has been fully compensated, monetarily, and is not entitled to any damages from the remaining Defendants." *Id.* at *4. This was because the settling defendant had already "paid the full amount of statutory damages … available for the alleged violations of the TCPA." *Id.* As a result, the court granted the remaining defendants' motion and dismissed the complaint, noting that "you cannot persist in suing after you've already won," *Id.* at *6; *see also Currier v. PDL Recovery Grp., LLC*, 2017 U.S. Dist. LEXIS 25240, at *31-32 (E.D. Mich. Feb. 23, 2017) (noting that "the TCPA limits statutory damages to one award per call," the court cited favorably to *Shamblin*, observing that "[l]ike the plaintiff in *Shamblin*, Plaintiff here has settled with Check N' Go for the same alleged calls it seeks to hold Defendants liable for now" and "[t]o the extent that Plaintiff has been compensated for such calls, he should not be permitted to recover again under the TCPA"); *Gen. Tel. Co. v. EEOC*, 446 U.S. 318, 333 (1980) ("It also goes without saying that the courts can and should preclude double recovery by an individual.").

8

Because the bar against double recovery applies to both judgements and voluntary settlements like the Pelican Case, this Court should apply this doctrine, follow the well-reasoned *Shamblin* and *Currier* decisions, and enter final summary judgment in Dimension's favor.

## III.   Bank's lawsuit against Dimension is barred by res judicata.

Dimension is also entitled to summary judgment because Bank's TCPA claims against Dimension in this action are barred by res judicata following the final judgment Bank obtained against Pelican for the same phone call in the Pelican Lawsuit. "To find that a claim is precluded based on res judicata, three requirements must be met: (1) the previous action must have involved an adjudication on the merits; (2) the previous action must have involved the parties or those in privity with them; and (3) the claims asserted in the subsequent action must have, or could have, been raised in the prior action." *Sash v. City of N.Y.*, 2008 U.S. Dist. LEXIS 121630, at *14 (E.D.N.Y. Jan. 18, 2008). There is no doubt that the first and third factors have been met here. The Pelican Lawsuit was voluntarily settled by Bank and then dismissed with prejudice on its merits after he received his $1,500 payment. (Statement ¶¶ 5-6). The same claims asserted in the Pelican Lawsuit are those litigated in this action: an alleged violation of the TCPA due to a single telephone call on May 18, 2022 involving the sale of a vehicle service contract to Bank. Bank also could have added Dimension as a party defendant to the Pelican Lawsuit, having allegedly discovered Dimension's role in the phone call prior to the deadline to amend the pleadings. (Statement ¶ 4). Instead, Bank failed to add Dimension as a party to the Pelican Lawsuit, which was then adjudicated on its merits through settlement and dismissed.

The second factor is also satisfied here, because Dimension was in privity with Pelican for purposes of the May 18, 2022 phone call to Bank. It is "well-settled law that there need not be literal privity for res judicata to apply." *Sash*, 2008 U.S. Dist. LEXIS 121630, at *15, citing

9

*Alpert's Newspaper Delivery Inc. v. The New York Times Co.*, 876 F.2d 266, 270 (2d Cir. 1989). Instead, federal courts in the Second Circuit have "recognized privity between parties to exist when the interests of one party were 'adequately represented by another vested with the authority of representation,' or 'where a party to a previous suit was, at the time of the litigation, acting as either a fiduciary or organizational agent of the person against whom preclusion is asserted.'" *Id.* at *16, quoting *Stichting Ter Behartiging Van de Belangen Van oudaandeelhouders In Het Kapitaal Van Saybolt International B.V. v. Schreiber*, 327 F.3d 173, 185 (2d Cir. 2003). All that is needed to find privity is some degree of control or coordination, "[e]ven when there is no formal agency relationship" between the parties. *Id.*

Here, privity exists between Pelican and Dimension. Pelican initiated and made the phone call on Dimension's behalf, and Dimension exercised control over Pelican's actions by requiring Pelican to comply with the TCPA when it placed telephone calls for Dimension. (Statement ¶¶ 7-8). Both entities had a common interest with respect to the May 18, 2022 phone call, and stand in the same shoes as respects potential liability. Highly instructive here is *Worsham v. Friends of Marilyn Mosby*, 2020 Md. App. LEXIS 684, at *9 (Md. Ct. Spec. App. July 15, 2020), in which the Maryland Appeals Court applied res judicata to preclude a plaintiff's successive TCPA claim. The plaintiff first brough a claim against Marilyn Mosby individually, claiming that her political campaign had illegally initiated two pre-recorded phone calls to the plaintiff's cell phone in violation of TCPA. Judgment was entered in favor of Mosby, and while plaintiff's appeal was pending he filed a second complaint against Mosby's political action committee and several Mosby staffers and employees alleging TCPA violations arising out of the same two phone calls.

The court dismissed the second action on res judicata grounds, even though the defendants were not identical. Privity was found to exist where the interests of Mosby individually and the

**Cahen Law, P.A., 1900 Glades Road, Suite 270, Boca Raton, Florida 33431**
**Office: (561) 922-0430, geoff@cahenlaw.com**

defendants in the second action were "so intertwined" that they were "properly considered in privity for the purpose of determining res judicata where they are alleged to have violated the TCPA by placing the same two phone calls which were the subject of prior litigation for the purpose of promoting Mosby's reelection." *Id.* at *10. The court concluded that the defendants in the second action "shared a common interest in avoiding the vexatious repackaging of the same claims that [plaintiff] had raised previously…." *Id.*; *see also Baranski v. NCO Fin. Sys.*, 2014 U.S. Dist. LEXIS 37880, at *11 (E.D.N.Y. Mar. 21, 2014) (dismissing second TCPA action based on res judicata where the "claims in this [second] case arise out of the same phone calls that formed the basis for the [first] SDNY Action"). The same commonality and overlap exists here such that privity must be found, thus satisfying all three factors for dismissal based on res judicata.

To the extent that Bank argues that privity is lacking between Dimension and Pelican, this argument would be unpersuasive. All that is required to establish privity is to show that the prior adjudication (here, the Pelican Lawsuit) was "a case involving the same parties or their privies." *Wilburn v. Eastman Kodak Corp.*, 670 F. Supp. 2d 192, 194 (W.D.N.Y. 2009). Bank is involved in both actions, and Dimension is in privity with Pelican for purposes of the May 18, 2022 phone call. That is enough to satisfy this element of res judicata. There can be no doubt that Pelican and Dimension are in alignment with respect to this single phone call, as Pelican initiated the call on Dimension's behalf and subject to Dimension's exhortation that it comply with the TCPA. Bank has offered no contrary, admissible evidence to suggest otherwise.

Such a position (if taken by Bank) would be fatally inconsistent with his argument to avoid liability under Section I above. With respect to that argument, Bank has previously claimed (with no evidence whatsoever) that Pelican was acting as Dimension's actual or apparent agent for purposes of vicarious liability. While Bank has failed to come forward with any proof of even any

11

allegation of this "fact," to the extent Bank is deemed to have done so then this in turn would satisfy the privity requirement for res judicata purposes, and dismissal would therefore still result. In contrast, Dimension's position is consistent: there exists sufficient privity between it and Pelican to obtain dismissal based on res judicata, but there has been no evidence set out by Bank of an agency relationship between the two entities. The level of privity necessary sufficient for res judicata purposes is lower than that required to demonstrate true agency. *See, e.g.*, *Sash v. City of N.Y.*, 2008 U.S. Dist. LEXIS 121630, at *16 (E.D.N.Y. Jan. 18, 2008) (holding that all that is needed to find privity is some degree of control or coordination, "[e]ven when there is no formal agency relationship" between the parties). Therefore, it is possible for two entities to be in privity for purposes of res judicata, but not have sufficient agency for purposes of vicarious liability. The opposite is not true, however. If Pelican was not Dimension's agent, then Dimension should be dismissed for not having initiated or made the May 18, 2022 phone call. If Pelican was Dimension's agent, then privity has necessarily also been established and Dimension should be dismissed based on res judicata principles after Bank settled with Pelican in the earlier lawsuit for the statutory maximum. In either case, dismissal must result. Dimension is entitled to final summary judgment.

## IV.     Bank lacks standing to sue under the TCPA because he is not a "called party".

Finally, Bank lacks standing to sue for the May 18, 2022 phone call because he was not a "called party" under the TCPA. "To make out a claim under the TCPA, [Bank] must show that (1) [Dimension] called him as a 'called party' on a residential telephone line; (2) using an artificial or pre-recorded voice; (3) without consent." *Leyse v. Lifetime Entm't Servs.*, 2015 U.S. Dist. LEXIS 139100, at *8 (S.D.N.Y. Sep. 22, 2015). The TCPA does not define the term "called party," but the FCC has promulgated rules and regulations for the TCPA in which it has defined the term as

12

follows: "We find that the 'called party' is the subscriber, *i.e.*, the consumer assigned the telephone number dialed and billed for the call, or the non-subscriber customary user of a telephone number included in a family or business calling plan." In re Rules & Regulations Implementing the TCP Act of 1991 et al., 30 FCC Rcd 7961, 8000-8001, 2015 FCC LEXIS 1586, *122-123 (F.C.C. July 10, 2015) (hereinafter, "FCC Rules and Regulations"). The FCC noted that its interpretation of "called party" included "individuals who might not be the subscriber, but who, due to their relationship to the subscriber, are *the number's customary user* and can provide prior express consent for the call." FCC Rules & Regulations, 30 FCC Rcd at 8001, 2015 FCC LEXIS 1586, at *125-126 (emphasis added).

Here, Bank's mother and not Bank is the "subscriber," because the call was placed to his mother's cellular phone and she is the person "assigned the telephone number dialed and billed for the call." (Statement ¶ 10). Bank is also not a "non-subscriber customary user" of his mother's cellular phone under the undisputed material facts presented here. Bank does not live with his mother, and he only occasionally visits her as her houseguest. (Statement ¶¶ 11-12). Bank is authorized to answer and make phone calls using his mother's cellular phone only while he is visiting her or in her physical presence, but otherwise Bank does not have access to that cellular phone, which stays with his mother when he leaves. (*Id.*). Bank's brother pays his mother's cellular phone bill, not Bank. (Statement ¶ 13). Bank's own cellular phone number is not included in any family plan with his mother and brother and is not part of the bill that Bank's brother pays, as Bank's brother does for his mother's cellular phone line. Bank's mother testified that Bank does not "really" use her cellular phone that much. In short, Bank is not a "customary user" of his mother's cell phone able to give "express consent" for calls received at that number when his only interaction with that phone is during sporadic visits to his mother's house.

**Cahen Law, P.A., 1900 Glades Road, Suite 270, Boca Raton, Florida 33431**
**Office: (561) 922-0430, geoff@cahenlaw.com**

In another TCPA case involving phone calls made to his mother's landline phone, this Court very recently determined that Bank was not a "called party" and therefore lacked standing under the TCPA under facts essentially identical to those presented here. In *Bank v. ICOT Holdings, LLC*, 2024 U.S. Dist. LEXIS 13672 (E.D.N.Y. Jan. 25, 2024) (Donnelly, J.), this Court held as follows:

> [Bank] has not cited any case, nor is the Court aware of any, holding that someone is a "called party" on these facts – where the only connection to the residential telephone line at issue is that the plaintiff spends "a sizeable minority of his time" at the residence with the subscriber telephone line, and is allowed to use that phone when he is there…. FCC's rule includes examples of nonsubscriber customary users, but nothing analogous to the plaintiff's situation. *See, e.g., Rules & Reguls.*, 30 FCC Rcd. at 8001 & n.270 (suggesting a called party could be a non-subscriber to whom the subscriber has "transfer[red] primary use of the telephone," among other examples). In *Leyse v. Lifetime Entertainment Servs.*, the court found that Leyse was a "called party" because he had lived at the subscriber's apartment for thirteen years, and regularly paid the bills for the telephone line. 2015 U.S. Dist. LEXIS 139100, 2015 WL 5837897, at *4. Similarly, in *Natale v. Arizona Premium Finance Co. Inc.*, the court found that Natale was a "called party" because the cellular phone subscriber "lived in the same apartment and thus constitute[d] a household" with Natale. No. 17-CV-934, 2021 U.S. Dist. LEXIS 51404, 2021 WL 1062609, at *8 (W.D.N.Y. Mar. 18, 2021).
>
> By contrast, [Bank] has not shown he has primary use of his mother's residential telephone, that he lives with his mother, or that he pays the telephone bill for that line. His allegation – that he spends "a sizeable minority" of his time at his mother's apartment – does not establish that the plaintiff is a called party. Rather, he is more like a frequent "houseguest" or a "visitor who picks up the phone" – a category of users that the Third Circuit has opined "would likely fall outside the protected zone of interests" under the TCPA. *Bank of Am. Nat. Ass'n*, 804 F.3d at 326 (finding a "called party" where the subscriber was the plaintiff's roommate).

*Id.* at *7-9, quoting *Leyse v. Bank of Am. Nat'l Ass'n*, 804 F.3d 316, 326 (3d Cir. 2015); *accord Bank v. Gohealth*, 2021 U.S. Dist. LEXIS 89871, at *31-32 (E.D.N.Y. May 11, 2021) (while factual issues remained which precluded defendant's motion to dismiss, noting that Bank in that case had "allege[d] something less than the facts that courts have previously found to support statutory standing under the TCPA," because Bank ***did not*** allege that "he shared his mother's

14

phone line as a member of a shared plan," that he "regularly paid the bill for the telephone line," or that he "resided full-time at his mother's residence," missing allegations which would suggest that he was probably a "mere houseguest" and not a "called party").

The same arguments and principles apply with equal force here. Bank does not have primary use of the cellular phone, does not live with his mother, does not pay the cellular phone bill, and does not share a family plan with his mother's cellular phone. As his mother's sporadic houseguest, Bank falls outside the protected zone of interests under the TCPA with respect to his mother's cellular phone. As a result, Bank lacks standing to sue in connection with the May 18, 2022 made to his mother's cellular phone, and Dimension is entitled to summary judgment on this additional basis.

<u>**CONCLUSION**</u>

There are no issues of disputed fact and Dimension is entitled to summary judgment as a matter of law on Bank's complaint for any or all of the four persuasive grounds set forth above. Accordingly, for the foregoing reasons, Dimension respectfully requests that the Court enter an order granting final summary judgment in its favor and against Bank, as well as any other relief this Court deems just and proper.

DATED:        February 2, 2024

                              Respectfully submitted,

                              CAHEN LAW, P.A.
                              *Counsel for Defendant*
                              1900 Glades Road, Suite 270
                              Boca Raton, Florida  33431
                              Tel.: (561) 922-0430
                              Email: geoff@cahenlaw.com

By: /s/ Geoffrey M. Cahen
Geoffrey M. Cahen
New York Bar No. GC9890
Geoff@cahenlaw.com

**Cahen Law, P.A., 1900 Glades Road, Suite 270, Boca Raton, Florida 33431**
**Office: (561) 922-0430, geoff@cahenlaw.com**

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by

cm/ecf this **2nd day of February, 2024**, to:

Todd C. Bank
TODD C. BANK, ATTORNEY AT LAW, P.C.
119-40 Union Turnpike, 4th Floor
Kew Gardens, New York 11415
tbank@toddbanklaw.com

By: <u>*s/ Geoffrey M. Cahen*</u>
Geoffrey M. Cahen

17